Good morning. Richard Rome, appearing for Mr. Butts. This case comes here after a plea to two counts, one drug offense and a weapons conviction. And he then pled guilty and subsequently raised through search and seizure whether the contraband was properly seized from his residence. And that's pretty much what brings us here today. It's our contention that there was insufficient proof that a warrant, in fact, existed. Could you address the appeal waiver first? I'd be glad to address the appeal waiver first. That raises an interesting question. In the plea agreement, there is, there's a couple of sections that deal with the waiver issue. And there's nothing that specifically deals with the waiver with respect to him appealing his Fourth Amendment rights. There is a section in the plea agreement that talks about waiving appeal rights, and that's in paragraph 23 of the actual agreement itself. And that section, that's page 435 of the excerpts, that deals with the waiving appeal rights does not address the issue of the Fourth Amendment. Right. Fourth Amendment is addressed earlier, but it's in a section that's not headed appeal rights. That's correct. And that's the issue that we, that's The general rule is an unconditional plea waives appeal rights, correct? Why doesn't this come within the general rule irrespective of what the agreement says? Well, I think this probably would change that general rule. In other words, by not including it in the second section of the waiver of appeal rights, it would be our position that it therefore opened the door to allow the defendant to appeal. During the plea colloquy, the district judge says, you know, you waive certain appeal rights. I found the district judge's language during the colloquy to be legally correct, but a little difficult to understand unless you really understand the contours of the doctrine. And she never did say, and you understand if you're by giving an unconditional plea, you give up the right, for example, to appeal on your Fourth Amendment. She never says that. Right. I think that's correct. I don't ever recall that being said. On the other hand, his lawyer says, you know, by pleading, by pleading, we've agreed not to appeal that issue. And he doesn't say Fourth Amendment, but it's pretty clear that's the issue he's referring to. Well, he does make a statement to that effect. Yeah. And it is problematic, but like the Court just said, I don't believe he specifically mentioned the Fourth Amendment rights. No, he does not. And it could be that because this sentencing scheme got carried out over a substantial amount of time, he may not have been sure exactly what he was referring to. I mean, he said it in a general sense. Between the time he pled and when he was sentenced, there were several months that did go by. So I think as far as any ambiguity, it would be fair to favor Mr. Butts in this case. But it is a dilemma. But we see a lot of these plea agreements, and it's hard to imagine that after all these years, there would be ambiguities that could still be raised in them. Well, what is the ambiguity in the plea agreement? Well, the ambiguity is there's nothing that says that he's waiving his appeal rights to his Fourth Amendment rights. And that is, there's an appellate waiver of certain sentencing issues, and there's a waiver of Fourth Amendment rights. But it's also couched in terms of bringing other pretrial motions. So it almost seems to be by doing this, you're waiving any further rights to go into the trial court and bring certain issues. Isn't this motion to suppress a pretrial motion? Well, yes, but it was already litigated. So it appears to be referring to pretrial motions, at least our interpretation, that haven't been litigated. In other words, you're now waiving any rights to do any further pretrial motions, including Fourth, Fifth Amendment, et cetera, et cetera. Well, I don't understand the principled basis for writing that word into the plea agreement. It doesn't say anything about litigated or unlitigated. It says pretrial motions. This is a pretrial motion. Therefore, it's waived. I mean, I understand the point. If it's ambiguous, I can see the point you're making and I'm sympathetic to it, but I don't see the ambiguity. I guess the ambiguity is that it should have been in the separate part. It should have been in the waiver portion of the plea agreement that dealt with waiving the appeal rights. Well, that might have been. I mean, there's also the presumption, and I didn't see this in this particular plea agreement, but when I take pleas, you know, you ask the defendant whether they've thoroughly discussed the plea agreement with their attorney and do they understand it. I mean, usually the attorney will have advised the defendant, I think we can presume, what the plea agreement's all about and what he's actually giving up in return for whatever the government happens to be giving him. Yes, I mean, a lot of times, I guess I could ask the question just to frame, maybe answer with the question is why isn't the waiver of the appeal rights of the Fourth Amendment not under the appeal waiver section of the plea agreement? Well, maybe it should have been, but that's just, you know, drafting. It's still the language is clear. Well, I mean, drafting can get us into all kinds of problems. Right, and we're not supposed to pay attention to the heading of statutes. You read what the statute says. Well, I mean, that, you know, I just think that that's where the, that's the horns of the dilemma that we're on in this particular instance. Well, I think that's actually the little bit of space you have to try to get into making this argument. Well, that's, you know, we have to crawl through the space that's available to us. Now, we've not conferred about this case ahead of time, so I don't know what my colleagues views are going to be in the end, but I rather suspect that they're inclined to find an appeal waiver. I'm not sure. I'm inclined not to, but I'm inclined to rule against you on the merits. So let me tell you what I think about the merits, and then you can respond to me. Okay. This looks to me as though it is a search for the sister. That's correct. And I see nothing improper if you're searching for the sister in the house, and you have found that police have probable cause to believe that she's there, which I think they do, given that that's the address that's been given. I don't think the probable cause is dissipated, because he says she's away on rehab, because it's a very common response when you're hiding somebody to say they're not here. They come to a locked door. I think they have reason to say, you know what, she may be in here. You better open it up. He opens it up. They smell marijuana. The dog, yeah, this is marijuana, and then they get a search warrant based upon that information. I see nothing wrong with this. Right. I mean, that's one view. Yeah, it is. It was yours. I think mine is a lot of the things that happened prior to that, where he was basically hot boxed out in front of his house. Yeah, but that's neither here nor there with respect to the ability to search the house looking for the sister, and they have a warrant. Well, but that raises the issue of, number one, was there a warrant? Because we never did see it. It's been reconstructed through cyberspace or whatnot. And if there was no warrant, then the question is whether with all of the police presence when he, you know, went out of his driveway at 445 that he was confronted by a police force out there, and whether he could give consent under those circumstances based on his version of the events. I mean, I don't know anybody that wouldn't give consent if you were out there at 5 o'clock in the morning. But I'm starting out from the assumption that they have a valid warrant and they don't need his consent. So maybe you can say, well, they didn't have a warrant. Well, the record is pretty clear that the original warrant was back in Sacramento, but that's okay. He never asked to see the warrant. There was a valid warrant issued. I don't think that's a dispute. Well, yeah, then I guess the next step would be if there was a warrant, whether they had reason to believe that she was present at that time. Yeah. And, you know, that's a debatable point. He only let him in on the condition. I mean, it was kind of a conditional entry anyway. But, again, if they have a valid warrant to search for her and they have probable cause to believe that she's in the house, whether he consents or not makes no difference. Right. But, again, you raise the point. I don't think the record showed that the officers had probable cause that she was in the house. The information that they had was pretty much, by all means, old information. He said that she lived there. In fact, the defendant never said that she was there. I don't know who said that she was there. The defendant said she wasn't there. And nobody knew that she was there. I mean, other than they made some calls to try to check to see if that was the correct address, I don't believe that there's anything that indicated that she was in the house. They were pretty much predetermined to go in. And just as a little bit of a background, there was some other police activity going on in the street, so at the time where they were serving these other arrest warrants. So this was a whole momentum thing where they were going to go into his house one way or the other. I think I'm over. Yes. Thank you, counsel. I'll take any questions or I'll submit on that. We'll submit on the other issue also. Thank you. Thank you very much. Good morning, Your Honors. Dorothy McLaughlin on behalf of the United States of America. May it please the Court. Your Honors, it is uncontested that defendant entered into an unconditional guilty plea whereby he did not reserve his rights under Federal Rule of Criminal Procedure 1182 to appeal the denial of his suppression motion. In addition to the fact of the nature of the plea being unconditional, there was also the section in the plea agreement which was previously discussed titled Waiver of Constitutional Rights wherein he waives his right to pursue Fourth Amendment claims and any pretrial motions that have been filed or could have been filed, among other things. Additionally, a point that wasn't mentioned. Let me read you that language, though. I mean, it is under Waiver of Constitutional Rights. You've got a separate heading dealing with appellate rights, and it says that after going through, you know, give up the right to speedy public trial, da-da-da-da-da-da. By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed. Boy, if that's attempting to say you give up the right to appeal, that's a pretty lame attempt. But, Your Honor, I would say it's a very broad waiver, as it's written, because it says any and all rights to pursue these claims. Yeah. I may end up with you on the general principle that an unconditional plea waives the right to appeal, but if I construe the plea agreement as the only basis for what's given, not given, waived, not waived, if you've got a special section that is headed waiver of rights to appeal, it's very complex. I mean, several pages long about this is waived, this is not waived, this is not. And here you have another section that does not have a heading as to appeal, that refers to this basically as pretrial motions, never mentions the word appeal. I say, you know, this is not intended to be and cannot reasonably be construed as a waiver of an appeal. Your Honor, I think a couple of things. First, I do think that because it says any and all, that's a pretty broadly encompassing waiver. But we're not just looking at the written plea agreement. We're also looking at the nature of the plea, as you note, that it's unconditional. And in the case law, for example, Lopez-Armenta, which I cited in my brief, the defendant in that case pled guilty without the benefit of a written plea agreement. So there, he just pled guilty, it was an unconditional plea, and this Court held you're out of luck, we're dismissing your appeal. Isn't the reason you have that language written so broadly there is because you're, this is a waiver, not just perhaps the right to appeal, but it's a waiver of the ability to make a collateral attack based on those scrams. I mean, isn't that language designed to say you're waiving these rights and you can't come back and you can't file habeas on this in state or federal court? You're just trying to make that one as broad as you possibly can. Yes, Your Honor, I agree. I mean, you have classes, right? You figure out, I mean, they've taught you what this language means, standard language in your plea agreement. Isn't that what it's getting to? Yes, Your Honor, I believe that is true. I would also add, though, that my understanding of the case law is that the plea colloquy really controls what is given up. And if you look at the plea colloquy, Judge Phillips conducted. She doesn't really. I think the plea colloquy is actually somewhat inadequate on that point. But I think within what happened with all of the parties, first of all, I think it's very evident the defendant was quite engaged, and I think more so than in other plea colloquies I've been involved in, because he's asking questions. She asks him, do you understand this? He said, no, I don't. At one point he said, actually, I didn't hear you. I was thinking about something else. I mean, he's definitely engaged in what's going on, and she is checking in with him as to whether he's understanding what he's giving up. And I think it's very telling, as Judge Fletcher pointed out a moment ago, that his own attorney says when we were talking about a different issue during the Well, he doesn't quite say that, but he gets pretty close. He gets pretty close. So I think when you look at the totality of the nature of the plea is unconditional. The waivers that are explicit in the plea agreement, however it may be drafted, and finally the totality of what's going on while we were all there in court, it's unreasonable to say that the defendant didn't understand what was being given up. And with that, I don't have anything else to add unless Your Honors have further questions. No, thank you. I'm happy to get the five minutes back since we probably have to seal the courtroom next. So United States v. Betts is submitted.
judges: Lynn, Wardlaw, Fletcher W.